Williams, J.
 

 The relator attacks the system of probation and contends that the statutes relating thereto are violative of various provisions of the state Constitution.
 

 There are three separate and distinct major methods of extending clemency in Ohio: (1) The Governor may, after conviction, grant reprieves, commutations and pardons by virtue of Section 11, Article III of the state Constitution, which contains this provision: “He [the Governor] shall have power, after conviction, to grant reprieves, commutations, and pardons, for all crimes and offenses, except treason and. cases of impeachment, upon such conditions as he may think proper; subject, however, to such regulations, as to the manner of applying for pardons, as may be prescribed by law. * * (2) the board of parole under authority of Sections 2211 to 2211-9, inclusive, General Code (now succeeded by the pardon and parole com
 
 *375
 
 mission, Amended Substitute Senate Bill No. 82, 118 Ohio Laws,-, passed April 27, 1939, which repeals Sections 2211 to 2211-9, inclusive, General Code), is .given power of parole; and (3) a judge or magistrate by force of Sections 13452-1 to 13452-8, inclusive, General Code, may after conviction or plea of guilty, suspend the imposition of sentence and place a defendant on probation under supervision, except in cases of juvenile delinquency and certain specified felonies.
 

 To make probation effective and salutary, the General Assembly has enacted Section 1554-1
 
 et seq.,
 
 General Code, authorizing the judge of the Court of Common Pleas or the judges of such court in joint session, with the concurrence of the board of county commissioners, to establish a county department of probation and providing for the conduct and regulation of such department.
 

 Are the statutes conferring power of probation upon the judge or magistrate (Section 13452-1
 
 et seq.,
 
 General Code) and those authorizing a probation department (Section 1554-1
 
 et seq.,
 
 General Code) in contravention of Section 11, Article III of the state Constitution (as quoted above), which confers upon the Governor the power of granting clemency?
 

 In this connection it is well to consider first the scope of the executive power so conferred.
 

 Reprieves and commutations are easily disposed of. Section 1 of Am. Sub. S. B. No. 82 defines a reprieve as “the temporary suspension by the Governor of the execution of a sentence, ’ ’ and commutation of sentence as “the substitution of a lesser for a greater punishment.” The common-law meaning of those terms is not materially different.
 
 Sterling
 
 v.
 
 Drake, Sheriff,
 
 29 Ohio St., 457, 460, 461, 23 Am. Rep., 762;
 
 In Matter of Victor,
 
 31 Ohio St., 206. Reprieves and pardons act upon the sentence and modify its operation. By their very nature, they cannot be granted until after sentence. Consequently probation which can be ordered
 
 *376
 
 by the court only before sentence under our statutes does not interfere with or impair the constitutional power of the executive as to reprieves and commutations.
 

 Pardons present more difficulty. Between conviction and sentence both the Governor and the judicial officer (the judge or magistrate) have been given power to act, the former to grant a pardon, the latter probation; and so the question arises as to whether granting of probation usurps or interferes with the executive power to extend pardon. In determining whether there is such usurpation or interference some confusion arises because pardon may take so many different forms. Perhaps then it is well, in discussing this phase of the problem, to consider the different forms of pardon and the relation of each to probation.
 

 A pardon may be absolute or conditional, full or partial; and a conditional pardon may be granted upon conditions precedent or subsequent.
 

 A full pardon purges away all guilt and leaves the recipient from a legal standpoint, in the same condition as if the crime had never been committed
 
 (Knapp
 
 v.
 
 Thomas,
 
 39 Ohio St., 377, 381, 48 Am. Rep., 462); a partial pardon releases from punishment without remission of guilt.
 
 Lee
 
 v.
 
 Murphy,
 
 63 Va. (22 Gratt.), 789, 12 Am. Rep., 563. The essential characteristics of full and partial pardons are such that either may be granted with or without conditions. Consequently a full discussion of absolute and conditional pardons will cover the whole field.
 

 An absolute pardon sets the accused free from the custody of the law, prevents further court action, terminates existing probation and makes anticipated probation impossible. Probation, however, merely grants grace to the guilty person with the evident purpose of helping him to reform; yet the probated offender is still under surveillance although at large. He is not a free man; he is subject to the restraints and conditions
 
 *377
 
 imposed by the court during the period of his temporary freedom. It may be urged, however, that with good behavior and compliance with all rules and regulations, the probated person will ultimately be free, for in any event the probationary period cannot exceed five years (Section 13452-5, General Code); and that therefore probation usurps the function of the Governor in exercising his constitutional right to free a convicted person. Yet in soundness the probationary period may be compared to a sentence term, as each is in reality an expiation of the crime. In either instance an absolute pardon relieves from the restraint that has been or may be imposed by the court whether by probation or by sentence. Absolute pardon prevents probation or a continuance of probationprobation neither prevents nor interferes with such a pardon.
 

 The power of executive pardon carries with it, as incidental thereto, the right to impose such valid conditions, precedent or subsequent, as the pardoning power may determine.
 
 Ex parte Kelly,
 
 155 Cal., 39, 99 P., 368, 20 L. R. A. (N. S.), 337;
 
 Lee
 
 v.
 
 Murphy, supra.
 
 See, also, annotation in 60 A. L. R., 1410. In this state, moreover, the Constitution expressly confers the right to impose conditions.
 

 A pardon upon conditions precedent, which is made effective by the recipient’s acceptance and is followed by performance of the conditions, seems to measure up to an absolute pardon in relation to probation; but a pardon on conditions subsequent has pe'culiar elements, an instructive discussion of which may be found in
 
 Ex parte Wells,
 
 59 U. S. (18 How.), 307, 15 L. Ed., 421. When a conditional pardon is granted, a sentence previously imposed continues
 
 in esse,
 
 though dormant, and upon failure of the pardonee to perform the conditions, may be carried into execution.
 
 State
 
 v.
 
 Horne,
 
 52 Fla., 125, 42 So., 388, 7 L. R. A. (N. S.), 719;
 
 Ex parte Houghton,
 
 49 Ore., 232, 89 P., 801;
 
 In re Discharge of Convicts,
 
 73 Vt., 414, 51 A., 10;
 
 In re
 
 
 *378
 

 McKenna,
 
 79 Vt., 34, 64 A., 77. Similarly, if sentence has not yet been passed when a conditional pardon is granted, a failure to perform the conditions leaves the court or magistrate free to exercise jurisdiction. The rationale of this doctrine is that the obliteration of the pardon by failure to perform conditions leaves the prisoner where it found him and therefore his status is the same as if the pardon had never been granted.
 
 Ex parte Marks,
 
 64 Cal., 29, 28 P., 109;
 
 In re Williams,
 
 149 N. C., 436, 63 S. E., 108, 22 L. R. A. (N. S.), 238. A conditional pardon operates to suspend probation until the conditions are performed and then is the same in effect as an absolute pardon.
 

 It thus appears that a pardon, which is granted after conviction but before sentence, whether full or partial, absolute or conditional, suspends the power of- the judge or magistrate to proceed further, either by way of sentence or probation, and if probation has been previously granted, lifts it; therefore suspending the imposition of sentence and granting probation does not and can not impair or affect the constitutional right of pardon vested in the executive.
 

 This conclusion finds ample support in the authorities. While the precise question has not been previously determined by this court the following cases have an indirect bearing thereon.
 
 Ex parte Scott,
 
 19 Ohio St., 581;
 
 State, ex rel. Atty. Genl.,
 
 v.
 
 Peters,
 
 43 Ohio St., 629, 4 N. E., 81;
 
 In re Nunley,
 
 102 Ohio St., 332, 131 N. E., 495.
 

 The contention that probation interferes with the executive power to grant clemency has frequently been under discussion in other jurisdictions in which the statutes permit probation either before or after sentence or both.
 

 This court has recognized that there is a distinction between suspending the imposition of sentence and suspending the execution thereof.
 
 Municipal Court of Toledo
 
 v.
 
 State, ex rel. Platter,
 
 126 Ohio St., 103, 184
 
 *379
 
 N. E., 1. Nevertheless in considering the constitutional question solely in relation to pardon the distinction appears to be “without a difference.” Although the statutes of Ohio do not provide for probation by a judge or magistrate after sentence upon suspension thereof, there are many states in which the power is given by statute and the decisions in such states are helpful, for, whether probation is before or after sentence is passed, the constitutional question is the same in scope and application.
 

 In most jurisdictions it is held that a law which confers power to order probation upon suspension of sentence does not contravene a constitutional provision conferring upon the Governor the power to grant reprieves, commutations and pardon's.
 
 Martin
 
 v.
 
 People,
 
 69 Colo., 60, 168 P., 1171;
 
 People
 
 v.
 
 Stickle,
 
 156 Mich., 557, 121 N. W., 497;
 
 Ex parte Bates,
 
 20 N. M., 542, 151 P., 698;
 
 People, ex rel. Forsyth, Dist. Atty.,
 
 v.
 
 Court of Sessions,
 
 141 N. Y., 288, 23 L. R. A., 856;
 
 Ex parte Hart,
 
 29 N. D., 38, 149 N. W., 568;
 
 State, ex rel. Tingstad,
 
 v.
 
 Starvich,
 
 119 Wash., 561, 206 P., 29;
 
 State, ex rel. Bottomly,
 
 v.
 
 District Court,
 
 73 Mont., 541, 237 P., 525;
 
 In re Hall,
 
 100 Vt., 197, 136 A., 24. See, also,
 
 Ex parte United States,
 
 242 U. S., 27, 61 L. Ed., 129, 37 S. Ct., 72.
 

 Statutes which permit probation after suspension of either imposition or execution of sentence have been held valid.
 
 Nix
 
 v.
 
 James, Dist. Atty.,
 
 7 F. (2d), 590;
 
 Archer
 
 v.
 
 Snook, Warden,
 
 10 F. (2d), 567;
 
 Riggs
 
 v.
 
 United States,
 
 14 F. (2d), 5, writ of
 
 certiorari
 
 denied, 273 U. S., 719, 71 L. Ed., 857, 47 S. Ct., 110;
 
 Richardson
 
 v.
 
 Commonwealth,
 
 131 Va., 302, 109 S. E., 460. In a few states the rule is to the contrary and probation statutes are held unconstitutional. Authorities supporting both the “majority view,” and “minority view” are collected in the annotations in 101 A. L. R., 1402, and 26 A. L. R., 399.
 

 This court adopts the “majority view” and holds
 
 *380
 
 that the probation statutes do not contravene the constitutional right to grant executive clemency.
 

 Is it within the province of the General Assembly to confer power of probation upon trial courts and magistrates as a judicial function?
 

 The state government under the organic law is constituted with three separate branches, executive, legislative and judicial. This characteristic is commonly referred to in constitutional law as the distribution of powers. This arrangement must not be disturbed if our system of state government under the Constitution is to be maintained unimpaired. It is therefore necessary to determine whether suspending imposition of sentence and granting probation amounts to the exercise of a judicial function.
 

 In
 
 Ex parte United States, supra,
 
 the court say: “ * * * and, so far as the future is concerned, that is, the causing of the imposition of penalties as fixed to be subject, by probation legislation or such other means as the legislative mind may devise, to such judicial discretion as may be adequate to enable courts to meet by the exercise of an enlarged but wise discretion, the infinite variations which may be presented to them for judgment, recourse must be had to Congress whose legislative power on the subject is in the very nature of things adequately complete.” See, also,
 
 People
 
 v.
 
 Stickle, supra.
 

 In the final analysis the judge or magistrate in suspending imposition of sentence and granting probation merely makes an order in a pending case. In this state trial courts and magistrates derive their jurisdiction in criminal causes from legislative enactment and, when the General Assembly confers jurisdiction to make such an order, that body is bestowing merely a judicial function under authority of the Constitution.
 

 Is Section 1554-1, General Code, unconstitutional because it authorizes a judge or judges of the Court of Common Pleas to create a probation department,
 
 *381
 
 appoint persons to positions therein and fix their salaries ?
 

 Such authorization does not constitute a delegation of legislative power or make the statute take effect upon any other authority than the General Assembly. See
 
 State, ex rel. DeWoody, Dir.,
 
 v.
 
 Bixler et al., Commrs., ante,
 
 263. Moreover it seems to be well settled that the authorization to appoint employees, whose duties are not strictly judicial, but necessaiy as an aid to the exercise of judicial functions, is within legislative power unless prohibited by constitutional provision, and this principle has been applied to probation officers.
 
 Nicholl
 
 v.
 
 Rosier, Aud.,
 
 157 Cal., 416, 108 P., 302;
 
 State, ex rel. Hall,
 
 v.
 
 Monongalia County Court,
 
 82 W. Va., 564, 96 S. E., 966. See 16 Corpus Juris Secundum, 501, Section 163. But it is urged that an express constitutional provision is violated for the reason that appointees in the probation department are officers within the meaning of Section 20, Article II of the Constitution which reads.:
 
 “The General Assembly, in cases not provided for in this Constitution, shall fix the term of office and the compensartion of all officers-,
 
 but no change therein shall affect the salary of any officer during his existing term, unless the office be abolished.” (Italics ours.)
 

 The criteria for determining whether a person filling a public position is an officer or an employee are many, such as the fixedness of tenure, the manner of qualifying before assuming the position and the duties imposed. Each ease, however, must rest upon its own footing. Appointment under Section 1554-1, General Code, does not clothe the appointee with any function of sovereignty or install him in a position which has durability of tenure. These characteristics of a public office are wholly lacking. Although the order of appointment and the probation statutes refer to some of the appointees in the probation department as “probation officers,” such designation is not controlling. If
 
 *382
 
 they are officers at all, they are officers of the court charged with enforcing the court’s rules and orders. Strictly speaking, we consider them employees and not officers within the meaning of the Constitution (compare
 
 State, ex rel. Hile,
 
 v.
 
 Zangerle, Aud.,
 
 115 Ohio St., 32, 151 N. E., 769, and
 
 Board of Edn. of Cleveland
 
 v.
 
 Featherstone,
 
 110 Ohio St., 669, 145 N. E., 31); and for that reason there is no violation of this constitutional provision.
 

 Other constitutional questions, which are raised, have been given careful consideration and our conclusion is that none of the contentions of the relator with respect to constitutionality is well founded.
 

 Did Section 2211-4, General Code (114 Ohio Laws, 590, effective August 12, 1931), repeal
 
 in toto
 
 Sections 1554-1 to 1554-6, inclusive, General Code, which, as heretofore stated, authorized the Court of Common Pleas to establish a probation department and prescribed standards for its guidance?
 

 The question must be answered in the negative but extended discussion is unnecessary on account of legislative changes which have been made since this action was instituted.
 

 Sections 2211 to 2211-9, inclusive, General Code, have been repealed by the Pardon and Parole Code passed as an emergency measure April 27, 1939 (Amended Substitute Senate Bill No. 82), to take immediate effect, by which the pardon and parol commission was created and established. Section 24 of that enactment contains this language:
 

 “All powers and duties vested in or imposed by law upon any other officers, boards or commissions, excepting the Governor in matters of executive clemency under the Constitution, with respect to the recommendation of pardon, commutation, or reprieve of any convict or prisoner, or to the parole of any prisoner, or the reimprisonment or recommitment to the institution of any person confined in or under sentence to
 
 *383
 
 any state penal or reformatory institution, are hereby transferred to, vested in and imposed upon the [pardon and parole] commission and shall be exercised in accordance with law and this act. Upon the appointment of the members of the commission and their qualification, said commission shall be and become the successor of and shall supersede any and all other boards, commissions and officers, excepting the Governor, with respect to such powers and duties. All matters and things now under the consideration of the board of parole, including pending applications for pardons, commutations and paroles, complaints against paroled prisoners, and unexecuted or partially executed findings, actions, recommendations, orders and determinations shall be forthwith, upon the effective date of this act, transferred to and acted upon by the commission. ”
 

 While Section 24 of the Pardon and Parole Code corresponds somewhat closely to Section 2211-4, General Code, it is significant that Section 1554-3, General Code, was amended in the same enactment so as to read thus:
 

 “In all cases in which the county department of probation acquires custody of or supervision over a person
 
 conditionally pardoned or paroled from a state penal or reformatory
 
 institution, the Common Pleas Court and the department shall be governed by the rules and regulations of the
 
 pardon and parol commission
 
 applicable to such cases, and by the laws of the state applicable thereto. In the case of other persons placed in its control or under its supervision, the department shall administer the orders and conditions of the authority so placing such persons. The Common Pleas Court may exercise supervision over, the county department of probation by adopting rules and regulations not inconsistent with law or with the rules and regulations of the
 
 pardon and parole commission
 
 
 *384
 
 which shall be observed and enforced by the probation officers of the department.” (Italics onrs.)
 

 The only changes made were the substitution of the words
 
 “conditionally pardoned or paroled from a stale penal or reformatory,”
 
 for the words “paroled or conditionally pardoned from a state penal reformatory or correctional,” and the words
 
 “pardon and parole commission,”
 
 for the words “state board of clemency.” (Italics ours.) This legislative course shows that parole and probation are intended to continue to exist coordinately.
 

 Section 24 does not in any way conflict with Sections 1554-1 to 1554-6, inclusive, General Code, in their present form, in so far as probation is concerned, for the simple reason that probation must be granted, if at all, before sentence, and parole after sentence and incarceration. If Section 24 is inconsistent with any provision of Section 1554-1
 
 et seq.,
 
 General Code, such inconsistency relates to the power of the probation department to receive into custody for supervision prisoners paroled by the pardon and parole commission. Whether such inconsistency exists is not squarely raised in the instant case and so is not determined.
 

 The probation statutes (Sections 1554-1 to 1554-6, inclusive, General Code), in so far as they relate to persons probated by a judge or magistrate, are in full force and unfnodified by Section 24 of the Pardon and Parole Code.
 

 What is the effect of the illegal practice of granting probation after sentence?
 

 The agreed statement of facts shows that the Court of Common Pleas of Cuyahoga county in many instances has imposed sentence for a felony committed, then suspended execution of sentence, and placed the defendant on probation under the supervision of a probation officer. The statutes do not authorize such procedure and the power to suspend the execution of
 
 *385
 
 sentence as a basis for probation does not exist in the absence of an empowering statute. Such irregularity, however, does not, of itself, render the county probation department unlawful; moreover mandamus will lie to correct the illegal practice.
 
 Municipal Court of Toledo
 
 v.
 
 State, ex rel. Platter, supra.
 

 Was
 
 the plaintiff entitled to a finding of facts in the Court of Appeals ?
 

 The plaintiff duly made request for such a finding which was refused, and, if he was entitled thereto, such a refusal would constitute prejudicial error.
 

 Section 12223-30, General Code, which regulates this phase of procedure in the appellate court, provides: “On application of a party objecting to a ruling or decision of the Court of Appeals during the trial, or on motion for a new trial, such court shall find from the evidence and state on the record the facts upon which the alleged error arises, or which may be material in determining whether or not error has intervened.”
 

 Since this cause was tried
 
 de novo
 
 in th'e appellate court on an agreed statement of facts (without evidence in addition thereto) after an appeal had been taken on questions of law and fact, the statute had no application. If that court had acceded to plaintiff’s request the factual finding could not have varied substantially from the facts agreed upon by the parties and would merely have encumbered the record with repetitious matter. The law does not require the doing of a vain thing and and the plaintiff is not prejudiced by failure to state the essential facts in the record twice.
 

 Since there is no prejudicial error apparent on the face of the record, the judgment of the Court of Appeals will be affirmed.
 

 Judgment affirmed.
 

 Zimmerman, Myers, Matthias and Hart, JJ., concur.
 

 Weygandt, C. J., and Day, J., not participating.